**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 5 1997**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ARTHUR M. SCHWARTZ, on behalf
of himself and all others similarly
situated,

      Plaintiff-Appellant,

v.

CELESTIAL SEASONINGS, INC.,
PAINEWEBBER, INCORPORATED,
SHEARSON LEHMAN BROTHERS,
INC., MO SIEGEL, RONALD V.
DAVIS, PHILIP B. LIVINGSTON,
VESTAR/CELESTIAL INVESTMENT
LIMITED PARTNERSHIP, JOHN D.
HOWARD, JAMES P. KELLEY,
ARTHUR J. NAGLE, DANIEL S.
O'CONNELL, ROBERT L. ROSNER,
BARNET M. FEINBLUM,

      Defendants-Appellees.

No. 95-1524

---

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 95-K-1045)

---

Dennis J. Johnson of Law Offices of Dennis J. Johnson, South Burlington, Vermont, (Gerald L. Bader, Jr. and Randolph S. Dement of Bader & Villanueva, P.C., Denver, Colorado, on the briefs), for Plaintiff-Appellant.

George B. Curtis of Gibson, Dunn & Crutcher, Denver, Colorado (Thomas M. Piccone and Jessica Lee of Gibson, Dunn & Crutcher, Denver, Colorado, on the briefs), for Defendants-Appellees PaineWebber, Incorporated and Lehman Brothers, Inc.

Jeffrey B. Rudman of Hale and Dorr, Boston, Massachusetts (Peter J. Macdonald and S. Tara Miller of Hale and Dorr, Boston, Massachusetts and Fred H. Bartlit, Jr., P.C., Thomas R. Stephens and John S. Phillips of Bartlit, Beck, Herman, Palenchar & Scott, on the briefs), for Defendants-Appellees Celestial Seasonings, Inc., Mo Siegel, Ronald V. Davis, Philip B. Livingston, Vestar/Celestial Investment Limited Partnership, John D. Howard, James P. Kelley, Arthur J. Nagle, Daniel S. O'Connell, Robert L. Rosner and Barnet M. Feinblum.

---

Before **HENRY**[*]**, RONEY**[**] and **MURPHY,** Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

Arthur M. Schwartz sued Celestial Seasonings, Inc., and others in the United States District Court for the District of Colorado for violations of securities laws. The district court dismissed the suit for failure to satisfy the particularized pleading requirements of Fed. R. Civ. P. 9(b). Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **reverses** and **remands**.

---

[*]Judge Henry was not present during oral argument; he was vouched in, however, and has listened to the tape-recording of oral argument.

[**]The Honorable Paul H. Roney, Senior Circuit Judge for the Eleventh Circuit, sitting by designation.

## I. FACTUAL BACKGROUND

In July 1993 Celestial Seasonings, Inc., the largest manufacturer and marketer of herb teas in the United States, issued approximately two million shares of stock in an initial public offering (hereinafter "IPO"). The IPO Prospectus revealed that Celestial was introducing new ready-to-drink ("RTD") iced tea products in an effort to expand beyond its established hot tea business. The IPO Prospectus also revealed that Celestial had entered into a marketing agreement with Perrier (hereinafter "Perrier Agreement" or "Agreement"), under which Perrier gained exclusive rights to make and sell the new Celestial iced tea beverages in the United States and Canada. Celestial made a secondary public offering of stock (hereinafter "SPO") in January 1994. The SPO Prospectus again discussed the new iced tea products and the Perrier Agreement. In May 1994, however, Celestial announced it had entered into discussions with Perrier to amend or terminate the Agreement. Thereafter, Celestial stock prices declined.

## II. PROCEDURAL HISTORY

Appellant-plaintiff, Arthur Schwartz filed suit in the district court on behalf of himself and other similarly situated purchasers of Celestial stock claiming fraud. He asserted that Celestial, despite knowingly or recklessly disregarding the fact that the Perrier Agreement was an illusion, made statements which misled

-3-

investors to conclude that the Agreement would enable Celestial to utilize Perrier's resources to sell its new iced tea products. Specifically, the Complaint alleges that the appellees-defendants, which include Celestial, certain Celestial insiders, and the underwriters for the IPO and SPO, PaineWebber, Inc., and Lehman Brothers, Inc., issued statements which led investors to conclude as follows: that Celestial would be able to utilize Perrier's manufacturing, marketing, and distributing capabilities to sell its RTD teas in the United States and Canada; that the Perrier Agreement would enhance Celestial's position as a specialty beverage company, increase the availability of its products at convenience stores, wholesale clubs, restaurants and food service operations, and allow it to further capitalize on its high brand awareness and on the growth in the RTD market; that Perrier, having promoted Celestial's RTD teas in test markets, would be selling Celestial's RTD products in fourteen major metropolitan markets in the Summer of 1993; and that a joint venture between Perrier's parent, Nestle, and Coca-Cola would not adversely impact the Perrier Agreement.

The Complaint further alleges that the defendants knowingly or recklessly disregarded the following facts: Perrier's distribution system was incompatible with the sale of RTD teas; the Perrier Agreement could not result in any significant sales of Celestial's products unless Perrier were willing to expend material amounts of money and time to revamp its distribution system and thus be

able to market RTD teas in appropriate retail outlets; Perrier was not making, nor would it make in the future, any significant effort to market Celestial's RTD teas because it was focusing its efforts elsewhere; Nestle's arrangement with Coca-Cola was already adversely affecting Perrier's ability and willingness to market Celestial's RTD products; and Celestial, given the limited distribution it would be able to achieve under the Perrier Agreement, was not then and would not in the future be able to afford the shelf space "slotting fees" necessary for expansion. [*See id.* at 4.]

Based on these assertions, plaintiff sought damages, claiming (1) primary liability for direct violations of § 11 of the Securities Act of 1933 and § 10(b) of the Securities and Exchange Act of 1934 (including Securities and Exchange Commission Rule 10b-5 promulgated thereunder); and (2) secondary liability of "control persons" for violations of § 15 of the 1933 Act and § 20 of the 1934 Act. *See* Securities Act of 1933, ch. 38, 48 Stat. 74 (codified as amended at 15 U.S.C. §§ 77a-77aa (1997)); Securities Exchange Act of 1934, ch. 404, 48 Stat. 881 (codified as amended at 15 U.S.C. §§ 78a-78mm (1997)).

The defendants filed a motion to dismiss, arguing that the Complaint failed to satisfy the particularized pleading requirement of Fed. R. Civ. P. 9(b) and that the action was barred by the statute of limitations. The district court dismissed the suit, ruling that while the action was not time barred, the §§ 11 and 10(b)

primary liability claims failed under Rule 9(b)[1]; and the §§ 15 and 20 secondary liability claims failed as a consequence of the failure of the primary liability claims.[2]

The district court's Rule 9(b) analysis of the Complaint was as follows:

[T]he complaint amounts to eighty paragraphs of scattered allegations -- some more specific than others -- which are then lumped together generally in Schwartz's federal securities claims. While Schwartz's had pleaded detailed facts in the first eighty paragraphs of his complaint, he has failed to identify the circumstances constituting fraud upon which his various securities claims rely. Schwartz's complaint fails to meet the particularity requirements of Rule 9(b) because it does not adequately identify (1) the time, place and contents of the fraudulent misrepresentations or omissions; (2) the identity of the party alleged to have made the misrepresentations or omissions; and (3) the consequences of those misrepresentations or omissions.

Aplt. App. at 344. The district court also indicated that the §§ 11 and 10(b) claims were deficient because they failed to indicate which specific documents contained the alleged fraudulent statements, and because they failed to reveal the contents of the misrepresentations by "at least enumerating which paragraphs in the Complaint contain them." The court also indicated that the § 10(b) claim

[1] Preliminary to the district court's holding that the §§ 11 and 10(b) claims failed under Rule 9(b) was a ruling that the federal claims were premised on fraud and thus subject to Rule 9(b); the plaintiff had argued that the § 11 claim was not premised on fraud and thus was not subject to Rule 9(b).

[2] The district court initially dismissed the suit without prejudice, giving the plaintiff twenty days to amend. The court, however, threatened to impose sanctions if the plaintiff filed an amended Complaint that failed to correct the original Complaint's deficiencies under Rule 9(b).

-6-

failed to "identify the specific misrepresentations made and which defendants are alleged to have made them."

Plaintiff argues that the § 11 claim is not premised on fraud, and thus is not subject to Rule 9(b); he further argues that the § 10(b) claim satisfies Rule 9(b). He also argues that the district court correctly ruled that the action was not barred by the statute of limitations and that this issue thus does not provide an alternative ground to affirm the dismissal.[3]

## III. THE COMPLAINT

The Complaint identifies each of the defendants and describes their involvement with, or responsibility for, the alleged fraud. (Complaint ¶¶ 6-24, 30-32.) It identifies, describes, paraphrases, and quotes allegedly fraudulent statements and/or omissions found in the IPO and SPO Prospectuses (Complaint ¶¶ 33-40, 46, 61-62); the underwriters' IPO "marketing materials" (Complaint ¶¶ 41-44); several Celestial press releases (Complaint ¶¶ 48, 52-54, 58, 63, 65-66); Celestial's Form 10-K (Complaint ¶ 55), Form 10-Q (Complaint ¶ 64), and report

---

[3]Plaintiff also argues that the district court violated Federal Rules of Civil Procedure 8 and 15(a) when it threatened to impose sanctions if the plaintiff were to submit an amended Complaint which failed to correct the Rule 9(b) deficiencies. In light of this court's reversal of the dismissal, it is not necessary to address the issue. *See Griffin v. Davies*, 929 F.2d 550, 554 (10th Cir. 1991) (holding court will not decide issues that will not affect outcome of dispute).

to stockholders (Complaint ¶¶ 56-57); PaineWebber reports and internal broker "wires" (Complaint ¶¶ 50, 68); and *Wall Street Journal* articles (Complaint ¶¶ 51, 67). The Complaint also alleges facts which the identified statements failed to disclose or misrepresented, and it explains how the statements accomplished the fraudulent scheme. (Complaint ¶ 45, 47, 59.)

Furthermore, the Complaint identifies the statements which first revealed that there were problems with the Perrier Agreement, but it alleges that these initial revelations were fraudulent because they failed to "fully reveal the nature or extent of Celestial's problems with Perrier." (Complaint ¶¶ 69, 70.) The Complaint alleges that the extent of these problems was not revealed until a May, 18, 1994 Dow Jones News Wire article, which it quotes. (Complaint ¶ 70.) The Complaint quotes various statements which announced or discussed the termination of the Perrier Agreement (Complaint ¶¶ 75-76.), including statements taken from a Celestial press release (Complaint ¶ 71); a PaineWebber report (Complaint ¶ 72) and internal wire to brokers (Complaint ¶ 73); statements by individual stock market analysts (Complaint ¶ 74); Celestial's August 9, 1994 Form 10-Q (Complaint ¶ 75), December 22, 1994 Form 10-K (Complaint ¶ 77), and 1994 Annual Report to Shareholders (Complaint ¶¶ 78-79); and a joint Celestial-Perrier press release (Complaint ¶ 76).

## IV. ANALYSIS

We review each of the issues in this case *de novo*, confine our analysis to the text of the Complaint, and accept as true the pleaded facts. *See Barrett v. Tallon*, 30 F.3d 1296, 1299 (10th Cir. 1994); *Seattle-First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir. 1986) (treating dismissal under Fed. R. Civ. P. 9(b) as dismissal under Fed. R. Civ. P. 12(b)(6)).

### A.      Section 11 Claim

When alleging a violation of § 11, a plaintiff who "purchased a security issued pursuant to a registration statement . . . need only show a material misstatement or omission to establish [a] prima facie case. Liability against the issuer of a security is virtually absolute, even for innocent misstatements."

*Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983) (footnote omitted).[4]

Thus, the plaintiff here was not required to have pleaded fraud in connection with the § 11 claim.

Defendants argue, however, that the § 11 claim is premised on fraud, thereby triggering Rule 9(b)'s particularity requirements, even though a § 11 claim may be pleaded without alleging fraud. In support thereof, defendants cite the Third Circuit case, *Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 287-89 (3d Cir. 1992). In *Shapiro*, the court rejected plaintiffs' argument that their § 11 claim was based on negligence because the complaint was "devoid of allegations

[4]In relevant part, § 11 provides:
(a) In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be state therein or necessary to make the statements therein not misleading, any person acquiring such security (unless it is proved that at the time of such acquisition he knew of such untruth or omission) may . . . sue--
> (1) every person who signed the registration statement;
> (2) every person who was a director (or person performing similar functions) or partner in the issuer at the time of the filing of the part of the registration statement with respect to which his liability is asserted;
> (3) every person who, with his consent, is named in the registration statement as being or about to become a director, person performing similar functions, or partner;
> . . . .
> (5) every underwriter with respect to such security.
15 U.S.C. § 77k.

that defendants acted negligently in violating [§] 11," and because the count containing the § 11 claim "did not allege ordinary negligence." *Id.* at 288.

Assuming without deciding that this court adopts the *Shapiro* analysis, the § 11 claim in the case at bar is not premised on fraud and does not trigger Rule 9(b) scrutiny. The § 11 claim, Count I of the Complaint, alleges that defendants failed to make a *"reasonable investigation* of the statements contained in the Registration Statements and Prospectuses" (Complaint ¶ 86, emphasis added); that the misrepresentations "would have been known [by the defendants] had they carried out their responsibilities with *reasonable care*" (Complaint ¶ 86, emphasis added); and that [the] defendants "failed to make a *reasonable investigation*, . . . [did not] possess[] *reasonable grounds for belief*, . . . and knew, or in the *exercise of reasonable care* should have known, that the statements . . . were materially untrue and incomplete." (Complaint ¶ 87, emphasis added.) Because *Shapiro* is thus inapposite to the case at bar, and because plaintiff is not required to have alleged fraud to establish a prima facie § 11 claim, Rule 9(b) does not apply to plaintiff's § 11 claim.

**B.    Adequacy of § 10(b) Claim under Rule 9(b)**

Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." True to the rule's straightforward language, this court has held that Rule 9(b) requires only the identification of the circumstances constituting fraud, and that it does not require any particularity in connection with an averment of intent, knowledge or condition of mind. *Seattle-First*, 800 F.2d at 1101.

The requirements of Rule 9(b) must be read in conjunction with the principles of Rule 8, which calls for pleadings to be "simple, concise, and direct, . . . and to be construed as to do substantial justice." Fed. R. Civ. P. 8(e), (f); *see Seattle-First*, 800 F.2d at 1101. The purpose of Rule 9(b) is "to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based . . ." *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992) (quoting *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990)). Simply stated, a complaint must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Lawrence Nat'l Bank v. Edmonds* (*In re Edmonds*), 924 F.2d 176, 180 (10th Cir. 1991). *Compare Bradford v. Moench*, 670 F. Supp. 920 (D. Utah 1987) (holding securities purchaser's allegations of fraud against securities-issuing company and company directors to be sufficient under Rule 9(b) because they set forth specific time period and content of misrepresentations) *with*

*Segal v. Gordon*, 467 F.2d 602 (2d Cir. 1972) (upholding Rule 9(b) dismissal of complaint which contained mere conclusory allegations of fraud phrased in terms of federal securities legislation).

1.     *Identification of the Time, Place and Content of the Fraudulent Misrepresentations or Omissions.*

The Complaint adequately identifies the time, place, and contents of the alleged fraudulent statements.  It describes the statements with particularity and even quotes them in most instances.  Furthermore, the Complaint identifies the documents, press releases, and other communications which contain the statements.  (Complaint ¶¶ 33-40, 46 (IPO Prospectus statements); 41-43 (IPO marketing materials); 48, 52-54, 58, 63, 65, 66 (press releases); 55 (Form 10-K); 56-57 (report to stockholders); 64, 69 (Form 10-Q's); 61-62 (SPO Prospectus statements); 50, 68 (PaineWebber reports and internal wires to brokers); 51, 67 (Wall Street Journal articles); 70 (Dow Jones News Wire).)  The Complaint also specifically alleges the facts which the statements misrepresented or failed to disclose.  (Complaint ¶ 47.)

Count II, the § 10(b) claim, incorporates by reference all of the statement-identifying paragraphs, as allowed under Federal Rules of Civil Procedure 10(c).[5]

_____

[5]Rule 10(c) reads as follows:  "Statements in a pleading may be adopted by reference in a different part of the same pleading . . . ."

*See Nolan Bros. Inc. v. United States*, 266 F.2d 143, 146 (10th Cir. 1959) (noting generally that the sufficiency of a complaint must be judged by the complaint in entirety, rather than in a piecemeal fashion). Count II also explicitly ties the § 10(b) violations to the "releases, prospectuses, statements and reports referred to above." (Complaint ¶ 94). The district court reasoned that the Complaint failed under Rule 9(b) because Count II does not "enumerat[e] which paragraphs in the Complaint" contain the statements which give rise to the § 10(b) claim. This reasoning effectively deprives plaintiff of its Rule 10(c) right to incorporate by reference. A fair reading of the Complaint indicates that by cross-referencing as allowed by Rule 10(c), it sufficiently particularizes the circumstances constituting fraud to comply with Rule 9(b). *Seattle-First*, 800 F.2d at 1101.

### 2. *Identification of the Parties Alleged to Have Made the Misrepresentations or Omissions*

Rule 9(b) requires that a complaint set forth the identity of the party making the false statements, that is, which statements were allegedly made by whom. *Lawrence*, 924 F.2d at 180; *Seattle-First*, 800 F.2d at 1101 (10th Cir. 1986). Rule 9(b) does not require that a complaint set forth detailed evidentiary matter as to why particular defendants are responsible for particular statements, or that the allegations be factually or legally valid. Instead, Rule 9(b) requires that the pleadings give notice to the defendants of the fraudulent statements for which

they are alleged to be responsible. *See Goldman v. Belden*, 754 F.2d 1059, 1069-70 (2d Cir. 1985) ("[T]he Complaint adequately . . . identified the defendants charged with having made [the allegedly fraudulent] statements. . . . There can be no doubt that the Complaint gives each defendant notice of what he is charged with. No more is required by Rule 9(b).").

The defendants fall into three groups: (a) Celestial Seasonings, Inc.; (b) Certain of Celestial's officers, directors, and major shareholders (hereinafter, collectively the "Celestial defendants"); and (c) the lead underwriters of Celestial's IPO and SPO, PaineWebber, Inc., and Lehman Brothers, Inc. (hereinafter, collectively the "underwriter defendants").

(a)     Celestial Seasonings, Inc.

Neither the district court nor the defendants address the question of whether the Complaint adequately alleges the responsibility of Celestial itself for the purported fraudulent statements, focusing instead on perceived inadequacies in the allegations of the other defendants' responsibility. Nonetheless, the Complaint plainly attributes the statements of the individual defendants to Celestial Seasonings, Inc. itself (*see, e.g.,* Complaint ¶ 21.).[6]

---

[6]Celestial is responsible for the accuracy and completeness of its own public filings. *See, e.g., Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1098, 1083 (1991); *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 282 (3d Cir. 1991).

(b)     The Celestial defendants

The Complaint alleges that the Celestial defendants, namely Mo Siegel, Ronald V. Davis, Philip B. Livingston, Vestar/Celestial Investment Limited Partnership, John D. Howard, James P. Kelley, Arthur J. Nagle, Daniel S. O'Connell, Robert L. Rosner, and Barnet M. Feinblum, are responsible for all of Celestial's alleged fraudulent statements: *"The Individual Defendants had the power and the influence . . . to cause* Celestial to engage in the unlawful acts and conduct alleged herein. *The Individual Defendants caused* the publication of the materially false and misleading Prospectuses, Registration Statements and Celestial's public filings and statements issued during the Class Period . . . ." (Complaint ¶¶ 9-17, 19, 21, 23 (emphasis added)).[7]

The defendants argue that the Complaint's failure to match specific Celestial statements with specific Celestial insiders violates Rule 9(b). To the contrary, the identification of corporate insider defendants without matching specific misstatements with specific officers or directors does not violate Rule

---

[7]The Complaint identifies the "Individual Defendants" as including the "Vestar Defendants," Siegel, Livingston, Davis, and Feinblum, and identifies the "Vestar Defendants" as including Vestar/Celestial Investment Limited Partnership, Howard, Kelley, Nagle, and Rosner. (*See* Complaint ¶¶ 12, 18, 20.) Conspicuously absent from the "individual Defendants" definition is defendant O'Connell. O'Connell, however, is alleged to have signed the IPO and SPO Registration Statements and 1993 Form 10-K, to have been a director of Celestial through the SPO, and to have been a general partner of Vestar. (Complaint ¶ 16.)

9(b).  *See Levit v. Aweida* (*In re Storage Tech. Corp. Sec. Litig.*), 630 F. Supp. 1072, 1076-77 (D. Colo. 1986).  Identifying the individual sources of statements is unnecessary when the fraud allegations arise from misstatements or omissions in group-published documents such as annual reports, which presumably involve collective actions of corporate directors or officers.  *See id.*; *Samuel v. Pace Membership, Inc.*, 686 F. Supp. 873, 874 (D. Colo. 1988); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1440 (9th Cir. 1987) (prospectuses, registration statements, annual reports, press releases, or other "group published information" are presumed collective actions).  The Complaint thus adequately identifies the Celestial defendants it alleges are responsible for Celestial's statements,[8] thereby putting them on notice sufficient to satisfy Rule 9(b).

   (c)    The underwriter defendants

---

[8]Paragraph 23 of the Complaint reads as follows:
Celestial's Board of Directors operated as a collective entity through periodic meetings held . . . where the Board discussed and approved the issuance of Celestial's Registration Statements and Form 10-Q Reports to Shareholders. . . .  Because Celestial's Board acted as a unit, conducted Celestial's business pursuant to agreements and formal resolutions as a Board, and received collectively the same information about Celestial's business at or about the same time, the Individual Defendants are jointly and severally liable for the wrongdoing alleged herein.  All statements of Celestial as alleged herein are equally the statements of all Individual Defendants.
(Complaint ¶ 23.)  The Complaint also details the insider involvement of each of the Celestial defendants.  *See* Complaint ¶ 9-24.

-17-

In order to adequately allege underwriter responsibility for Celestial's statements, the complaint must identify the specific role of the underwriters in propounding the fraudulent statements. *See Anderson v. Clow* (*In re Stac Elec. Sec. Litig.*), 1994 WL 525256, at ** 15, 17-19 (S.D. Cal. June 29, 1994). The Complaint alleges that the underwriter defendants, Lehman and PaineWebber, were "co-lead underwriters of the Offerings" and "participated in the scheme to inflate the stock price of Celestial ." (Complaint ¶ 8.) It also alleges that PaineWebber issued false and misleading research reports about Celestial, describing and quoting purported fraudulent statements therein. (*See* Complaint ¶¶ 8, 50, 68.) Furthermore, the Complaint identifies and quotes "false and misleading written materials [used] to market the IPO, [namely] *the underwriters'* written marketing materials . . . ." (*See* Complaint ¶ 41-43 (emphasis added).) The Complaint thus adequately identifies the specific role of the underwriters in propounding the allegedly fraudulent statements.

       3.     *Identification of the Consequences of Misrepresentations or Omissions*

The Complaint plainly describes the fraud scheme and spells out the consequences thereof. (Complaint ¶ 45.) It identifies the fraudulent statements and alleges the facts which the statements misrepresented or failed to disclose. (Complaint ¶ 47.) The Complaint specifically pleads:

[T]he materially false and misleading . . . statements . . . led investors to believe that, as a result of the Perrier Agreement, Celestial would obtain a substantial market for its ready-to-drink tea in the very near future, with a resulting increase in earning and profits.

The . . . unlawful acts and conduct alleged herein . . . maintain[ed] an artificially high price for Celestial's shares . . . .

. . . .

By stressing the Perrier Agreement and its imminent prospects, defendants knew that and intended that investors would look at Celestial as an immediately viable competitor to Snapple, in the then exploding market for ready-to-drink teas. To accomplish this illusion, the Prospectus repeatedly touted the existence of the Perrier Agreement . . . .

(Complaint ¶¶ 21-22, 33.) Additionally, the Complaint sets out the history of the Celestial stock price, alleges the inflationary impact of the fraud, and describes the eventual decline of the Celestial stock rating and prices upon Celestial's revelation of the problems with, and the eventual cancellation of, the Perrier Agreement. (Complaint ¶¶ 30-32, 59, 70-76.)

C.     Statute of Limitations

This court may affirm the decision of the district court for any reason supported by the record below. *Hensel v. Chief Admin. Hearing Officer*, 38 F.3d 505, 508 (10th Cir. 1994). The defendants argue that the statute of limitations provides an alternative ground for dismissal.

The federal securities claims raised in this case must be filed within one year after the plaintiff has notice of the violation. *See* 15 U.S.C. § 77m. This one

year period begins when the violations are or should have been discovered. *Id.* Plaintiff filed this action on May 5, 1995. He claims he could not reasonably have discovered the violations earlier than May 9, 1994, the date of Celestial's Form 10-Q which first announced that Celestial and Perrier were considering terminating the Perrier Agreement. Defendants' argument that earlier Celestial reports of limited success in 1993 and predictions of limited success in 1994 put plaintiff on "inquiry notice" is unavailing. Not until the May 9, 1994 Form 10-Q could plaintiff reasonably have discovered the violations. The filing of this action within one year of the Form 10-Q thus falls within the statute of limitations.

Defendants present two additional alternative grounds upon which to affirm: (1) that the IPO Prospectus "bespoke caution"; and (2) that twenty-one "post-Prospectus" statements are not actionable. These arguments, however, fail to address all of the statements alleged in the Complaint to violate federal securities laws. Thus, they present only grounds to affirm in part. Furthermore, although the defendants raised these issues in their Motion to Dismiss, the district court did not address them. Under these circumstances, this court declines to consider these issues on appeal.

## V. CONCLUSION

This court holds (1) that the § 11 claim is not subject to Rule 9(b); (2) that the § 10(b) claim is sufficient under Rule 9(b); and (3) that the action is not barred by the statute of limitations. Furthermore, since the primary liability claims under §§ 11 and 10(b) do not fail, the rationale upon which the district court based the failure of the secondary liability claims under §§ 15 and 20 is not valid.

We therefore **REVERSE** the judgment of the United States District Court for the District of Colorado and **REMAND** the case to the district court.