UNITED STATES of America, ex rel.,
Ali BAHRANI, Plaintiffs,

v.

CONAGRA, INC.; ConAgra Foods, Inc.; ConAgra Hide Division; ConAgra Beef Company; and Monfort, Inc., Defendants.

No. CIV.A. 00–K–1077.

United States District Court,
D. Colorado.

Jan. 22, 2002.

George Harold Parker, Jr., DeDolph & Parker, LLP, Fort Collins, CO, for plaintiff.

Darrell G. Waas, David Patrick Hutchinson, Patricia Claire Campbell, Daniel Kennedy, Calisher, Otten, Johnson, Robinson, Neff & Ragonetti, P.C., Denver, CO, John J. Schirger, Mark F. Enenbach, Thomas James Kelley, Edward George Warin, McGrath, North, Mullin & Kratz, Omaha, NE, for defendants.

## MEMORANDUM DECISION AND ORDER

KANE, Senior District Judge.

Plaintiff–Relator Ali Bahrani brought this action on behalf of the United States under the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3729–3733, to recover damages and civil penalties from Defendants for knowingly using a false record to avoid paying certain fees to the United States Department of Agriculture ("USDA").[1] Defendants move to dismiss on a variety of grounds. For the reasons stated below, I deny their motion.

### FACTUAL BACKGROUND

Bahrani worked as a "Document Coordinator" at Defendant Monfort, Inc.'s Greeley, Colorado facility from 1996–98. His job duties consisted of preparing and processing documentation for the export of animal hides.

One of the documents required to export a shipment of animal products is an Export Certificate, issued by the USDA, certifying that the animal products have been inspected and passed by a USDA or USDA-certified inspector. *See* 9 C.F.R. § 322.2. By regulation, each Certificate has a unique serial number and states the shipment's destination, the exporter and the consignee, the number and kinds of products it contains and other information about the shipment. *Id.* Bahrani alleges that if the shipment's destination or buyer changes after issuance of the original Export Certificate, the USDA requires the shipper to obtain an updated replacement or "in lieu of" Export Certificate. During the time in question, the USDA reportedly charged a user fee of $21.50 to obtain an original Export Certificate and an additional $21.50 fee for issuance of an "in lieu of" Certificate.

In his complaint, Bahrani alleges that Monfort, its parent company, Defendant ConAgra, Inc., and the other ConAgra entities named as Defendants in this action routinely altered original Export Certificates or forged new Certificates, rather than obtaining a USDA-issued "in lieu of" Certificates, whenever the destination and/or buyer of an animal product shipment changed after the USDA had issued the shipment's Export Certificate. Based on his personal experience and information from co-workers, Bahrani alleges Defendants altered over 200 Export Certificates per week and that they had followed this

---

1. The FCA allows private citizens, known as relators, to bring a civil action in the name of the United States against those who defraud the federal government. 31 U.S.C. § 3730(b)-(f); *United States ex rel. Ramseyer v. Century Healthcare Corp.,* 90 F.3d 1514, 1517 (10th Cir.1996). To encourage individuals with knowledge of such fraud to bring suit, the FCA awards a successful *qui tam* litigant up to 30 percent of the final recovery. 31 U.S.C. § 3730(d); *Ramseyer,* 90 F.3d at 1517.

practice at Monfort's Greeley facility and at other locations for at least 10 years preceding the commencement of this action. Defendants engaged in this practice, according to Bahrani, for the purpose of depriving the United States government of the user fee for each required "in lieu of" certificate, to mislead and defraud foreign businesses, custom officials and customers, to avoid any delay that might result from obtaining proper Export Certificates and for other business purposes.

Monfort laid off Bahrani in August, 1998 as part of a work force reduction. Sometime before his lay-off, Bahrani had filed a charge of national origin discrimination against Monfort. In June, 1999, Bahrani settled this claim and executed a "Full and Final Release of All Claims and Settlement Agreement" ("Release") with Monfort.

Approximately one year later, Bahrani filed this *qui tam* action against Monfort and the other Defendants in camera and under seal as required by the False Claims Act. At the same time, also as required by the Act, he alleges he provided the United States with a statement of all material evidence and information related to his complaint. The complaint remained sealed until February 9, 2001, when the United States notified the Court that it declined to intervene in this action. Bahrani then served Defendants and the Defendants filed the subject motion to dismiss.

## DISCUSSION

Defendants contend this action must be dismissed because: (1) Bahrani's claims are barred by the Release; (2) the regulatory violations he alleges are not actionable under the False Claims Act; and/or (3) he failed to plead fraud with the specificity required by Rule 9(b) and failed to cite the proper sections of the FCA in

pleading certain matters. Each asserted basis for dismissal is discussed below.

### A. The Release

Defendants argue this action must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) because Bahrani has released the *qui tam* claims asserted in this action. In support of this contention, Defendants submitted a copy of the Release and an affidavit from Mia Clancy, a former Monfort attorney. Bahrani responded by submitting his own affidavit and other evidentiary material. In light of these submissions, both parties have requested I convert Defendants' motion to dismiss on the basis of the Release into a motion for summary judgment under Fed.R.Civ.P. 56. *See* Fed.R.Civ.P. 12(b) (if "matters outside of the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion shall be treated as one for summary judgment"). Each party has had notice and a reasonable opportunity to present all materials relevant to disposition of this issue on summary judgment. *See id.; David v. City and County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996) (sufficient notice of conversion to Rule 56 motion when both parties submitted evidentiary materials). Accordingly, I will review and decide the effect, if any, of the Release in this action as motion for summary judgment.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, I view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. *Simms v. Oklahoma ex rel. Dep't of Mental*

*Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir.1999). Defendants, as the moving parties, have the initial burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law. *Id.* If Defendants carry this burden, then the burden shifts to Bahrani to "set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A genuine issue of material fact exists if a rational juror could decide the disputed allegations in the non-movant's favor based on the evidence presented and the disputed fact might affect the outcome of the suit under the governing law. *See Schwartz v. Bhd. of Maint. of Way Employees*, 264 F.3d 1181, 1183 (10th Cir. 2001).

■ In order for the Release to bar this action, the parties agree it must both encompass his *qui tam* claims and be enforceable under the framework established by *United States ex rel. Green v. Northrop Corp.*, 59 F.3d 953 (9th Cir.1995), and *United States ex rel. Hall v. Teledyne Wah Chang Albany*, 104 F.3d 230 (9th Cir. 1997). I concur with this statement of the issues, but find I need address only the latter issue because even if the Release encompasses Bahrani's *qui tam* claims,[2] it is unenforceable for the public policy reasons stated in *Green.*

In that case, the court considered whether a general release, executed by a

former employee as part of the settlement of an employment termination dispute, was enforceable to bar the employee from bringing a subsequent *qui tam* action against his former employer. The court held the release was not enforceable against the *qui tam* claims under the federal common law test articulated by the Supreme Court in *Town of Newton v. Rumery*, 480 U.S. 386, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987). *Green*, 59 F.3d at 962–69. That test provides that "a promise is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement." *Rumery*, 480 U.S. at 392, 107 S.Ct. 1187 (relying on Restatement (Second) of Contracts § 178(1) (1981)).

The *Green* court concluded a release barring *qui tam* claims is generally unenforceable under the *Rumery* test because its enforcement would impair the substantial public interest in "encouraging insiders privy to a fraud on the government to blow the whistle on the crime." *Green*, 59 F.3d at 963 (internal quotation and citation omitted). Specifically, the court found enforcement of the release would threaten to nullify the many incentives Congress created in the False Claims Act to encourage those with knowledge of such fraud to reveal what they know and to supplement government enforcement of the Act by bringing private enforcement suits:

2. As relevant here, the Release bars Bahrani from asserting against Monfort and "any and all persons, firms, corporations, affiliates and subsidiaries" "any and all claims, demands, judgments, damages, expenses, actions or causes of action of any type whatsoever, including but not limited to, any claim ... of the violation of any other federal, state or local laws, statutes, regulations or ordinances including public policy ... arising out of or in connection with ... claims or loss resulting directly or indirectly from his employment with Monfort." Release, ¶ 2. I have serious

doubts the *qui tam* claims asserted in this action are within the scope of this Release. These claims are not "claims or loss resulting directly or indirectly" from his employment. The gravaman of this action is public, not private, and this action arises by virtue of the *qui tam* provisions of the FCA. Because Bahrani acts in the capacity of a public official for the benefit of the public, the fact that Bahrani's employment with Monfort gives him the information necessary to bring this action does not mean the cases arises out of his employment.

The Act reflects Congress's judgment that *incentives to file suit* were necessary for the government to learn of the fraud or to spur government authorities into action; permitting a prefiling release when the government has neither been informed of, nor consented to, the release would undermine this incentive, and therefore, frustrate one of the central objectives of the Act.

59 F.3d at 965 (emphasis in original); *see id.* at 963–64. The court also concluded enforcement of prefiling releases would substantially dilute another objective of the FCA, which is to deter fraud against the government by making perpetrators "liable to actions by private persons acting, if you please, under the strong stimulus of personal ill will or the hope of gain." *Id.* at 965 (internal quotation and citation omitted).

In *Hall*, the Ninth Circuit carved out an exception to the general rule announced in *Green*. In that case, the relator was a former employee of a company that manufactured containment sheaths for nuclear fuel rods supplied to the United States government. 104 F.3d at 231. While an employee of the company, the relator notified his employer that he believed a flaw in the manufacturing process was resulting in the production of containment sheaths that did not meet government specifications. Both the company and the relator notified the relevant regulatory agency, the Nuclear Regulatory Commission ("NRC"), of the employee's complaints, and the NRC investigated them by inspecting the containment sheaths and their production process. It ultimately determined the sheaths were in accordance with customer requirements. *Id.*

While the NRC investigation was underway, the company fired the relator. The relator then sued the company in state court, alleging he was improperly terminated for notifying the NRC that the company was falsely representing its product. More than a year later, and long after the NRC was notified of these complaints and completed its investigation, the relator settled his state court action and executed a broadly worded general release of all potential claims against the company.

When the relator some months later filed a *qui tam* action against the company based on the same allegations made in the state court action, the company successfully moved to dismiss based on the release executed in settling that action. *Id.* The Ninth Circuit affirmed, holding that the public policy concerns that barred enforcement of the general release in *Green* were not implicated because: (1) the federal government had "full knowledge of the plaintiff's charges" before he executed the release, so the public's interest in disclosure of information regarding government fraud was not affected by enforcement of the settlement, *id.* at 231, *see id.* at 233; and (2) enforcement would not disturb the public's interest in the use of *qui tam* suits to supplement federal enforcement of the FCA because the federal government "had already investigated the allegations prior to settlement." *Id.* at 233, *see id.* at 231.

As the moving party on summary judgment, Defendants had the initial burden of demonstrating the absence of any genuine issues of fact and that they are entitled to judgment as a matter of law. For the Release to be enforceable under the *Hall* exception to the general rule, this required Defendants to demonstrate that the federal government both knew of Bahrani's allegations and investigated them before Bahrani executed the Release in June, 1999. The only evidence Defendants submitted to demonstrate these facts was the Clancy Affidavit, in which the former Monfort in-house counsel reported that in August 1998, shortly after Bahrani was laid off

and more than a year before he executed the Release, a man identifying himself as FBI agent Jeff Christianson told her in a telephone conversation that he was investigating a report that Monfort had altered some Export Certificates for animal hides. Clancy Aff., ¶ 4. Clancy concluded from this conversation that Christianson had spoken to Bahrani. *Id.*

Clancy's statements regarding her telephone conversation with Christianson are inadmissible hearsay concerning the government's knowledge and investigation of Bahrani's allegations. *See* Fed.R.Evid. 802. Rule 56(e) bars consideration of facts stated in affidavits if such facts would not be admissible in evidence. Fed.R.Civ.P. 56(e) (affidavits supporting and opposing summary judgment "shall set forth such facts as would be admissible in evidence"); *see, e.g., Scosche Indus., Inc. v. Visor Gear Inc.*, 121 F.3d 675, 681 (Fed.Cir.1997) (collecting cases). Accordingly, Defendants have not carried their burden of demonstrating undisputed facts entitling them to summary judgment and their motion may be denied on this basis alone. *See Henderson v. Inter–Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir.1994) (where evidentiary matter in support of summary judgment does not establish absence of genuine issue, summary judgment must be denied without regard to opposing evidence).

I would also deny Defendants' motion if agent Christianson's testimony was properly before me. At best, Clancy's account of her conversation does no more than establish that one agency of the federal government knew something about the alleged Export Certificate fraud and made a single phone call to one Defendant's in-house attorney about the alleged fraud before Bahrani executed the Release. Unlike the situation in *Hall*, Defendants have made no showing the federal government had "full knowledge" of Bahrani's allegations in this action at the time he executed the Release or that they had even decided at that time to investigate what they knew of these allegations.[3]

Consideration of the evidence submitted by Bahrani in opposition to Defendants' motion bolsters the conclusion that the Release is unenforceable under *Green* and *Hall*. Bahrani stated in his affidavit that he spoke to agent Christianson only briefly on two occasions a few days apart and that he never provided Christianson with any specifics regarding the alleged Export Certificate fraud. He also states he was not contacted by any government agents following up on his report to Christianson until August or September, 1999, several months *after* he signed the Release.[4] It was only at a subsequent meeting with USDA investigators, Bahrani states, that he provided federal investigators with information regarding the alleged Export

---

3. Bahrani argues the *Hall* exception does not allow enforcement of a release against a *qui tam* claim under any circumstances unless the federal government completed an investigation into the relator's allegations before the relator executed the release. While future cases may prove this to be true, I need not declare such a bright line rule in this action, as there is no evidence in the current record that the federal government had even decided to investigate Bahrani's report to Christianson before Bahrani executed the Release.

4. Bahrani also testified in his affidavit that FBI agent Christianson told him in their last conversation, which was just after Christianson said he had spoken to Monfort attorney Clancy, that the FBI was not going to investigate Bahrani's charges but rather was going to forward them to the USDA for it to handle however it wished. Bahrani Aff., ¶ 10. As this statement is also inadmissible hearsay, I do not consider it in deciding Defendants' motion.

Certificate fraud at Monfort's Greeley facility and other of Defendants' facilities.[5]

Under these circumstances, the public's interest in providing incentives for Bahrani to disclose fully to the government inside information concerning alleged government fraud was very much in place at the time Bahrani executed the Release. That the government had some knowledge of the alleged fraud does not negate this interest. *See Ramseyer*, 90 F.3d at 1520 (FCA's *qui tam* provisions intended to ensure "information bearing on potential fraud will come to light even if government officials should decide not to initiate proceedings based on information contained in government files."). The public's interest in Bahrani maintaining the ability to bring a *qui tam* action to supplement federal enforcement of the FCA also remained as there was no guarantee when Bahrani executed the Release that the federal government was ever going to investigate, let alone prosecute, the fraud he had briefly alleged to FBI agent Christianson. *See id.* at 1520 (one of chief purposes of FCA as amended in 1986 was to give "private attorneys general greater access to the courts" in order to redress "the government's perceived inability or unwillingness to prosecute fraud."). Enforcing the Release to bar Bahrani's *qui tam* claims would therefore substantially impair the public's revenue-based interest in private individuals disclosing fraud against the government and supplementing federal enforcement of the FCA through *qui tam* suits. Furthermore, enforcement of the Release to bar this action would impair the public's interest in deterring fraud by making perpetrators potentially liable to *qui tam* actions. *See United States ex rel. Gebert v. Transport Admin. Servs.*, 260 F.3d 909, 916 (8th Cir.2001). As in *Green*,

these public interest considerations override the general interest in enforcement of settlements and require that I hold the Release unenforceable against Bahrani's *qui tam* claims in this action. *See Green*, 59 F.3d at 968–69.

*B. Non-compliance with Regulations as a Basis for Liability under the False Claims Act*

■ Defendants contend Bahrani's claims must be dismissed pursuant to Fed. R. Civ P. 12(b)(6) because his allegations that Defendants failed to comply with various USDA regulations do not state a claim under the False Claims Act. I disagree. As relevant here, the FCA makes liable "any person who ... knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(7). Bahrani's allegations that Defendants falsified or forged Export Certificates in violation of USDA regulations in order to avoid paying the user fee necessary to obtain "in lieu of" Certificates falls squarely within this provision.

Defendants' theory that regulatory violations are not actionable under the FCA is specious and finds no support in *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1265 (9th Cir.1996) and the other cited authority. This authority merely establishes that a relator may not maintain a false certification claim under the FCA based on alleged regulatory violations unless the violation encompasses or is accompanied by a false certification of compliance with federal law. *See, e.g., Hopper*, 91 F.3d at 1265–66 ("Violations of laws, rules or regulations alone do not create a cause of action under the FCA. It is the

---

**5.** There is no evidence in the current record regarding the extent of any investigation conducted by the USDA after they met with Bahrani.

false *certification* of compliance which creates liability when certification is a prerequisite to obtaining a government benefit;" emphasis in original). This unremarkable proposition is of no consequence in this action because Bahrani does not purport to state a false certification claim, but rather bases his action on "reverse false claims" by Defendants in violation of section 3729(a)(7) of the Act. *See generally* John T. Boese, *Civil False Claims and Qui Tam Actions* § 106 (2d ed.2001) (distinguishing between "false certification" and "reverse false claim" actions under the FCA).

### C. Alleged Pleading Deficiencies

#### 1. Adequacy of Complaint under Rule 9(b)

■ Defendants next argue this action must be dismissed pursuant to Rule 12(b)(6) because Bahrani failed to plead the circumstances constituting the alleged fraud with particularity as required by Rule 9(b). The heightened pleading requirements of this rule apply to actions brought under the FCA, *see, e.g., United States ex rel. Russell v. Epic Healthcare Management Group,* 193 F.3d 304, 308 (5th Cir.1999), and require a plaintiff to "set forth the who, what, when, where and how of the alleged fraud." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899, 903 (5th Cir.1997) (internal quotation omitted); *see also Schwartz v. Celestial Seasonings, Inc.,* 124 F.3d 1246, 1252 (10th Cir.1997) (Rule 9(b) requires plaintiff to plead "the time, place, and contents of the false representations, the identity of the party making the false statements and the consequences thereof"). The purpose of this requirement is to provide each Defendant with sufficient notice of the misconduct alleged against it that it can answer and otherwise defend itself. *Schwartz,* 124

F.3d at 1252 (10th Cir.1997); *Gardner v. Investors Diversified Capital, Inc.,* 805 F.Supp. 874, 876 (D.Colo.1992).

I have carefully reviewed the First Amended Complaint and conclude it adequately sets out the time, place and nature of the alleged fraud, how it was committed, who committed it and how it benefitted Defendants. No more is required under Rule 9(b) to put the Defendants on notice of the claims asserted against them.

■ I also find no merit in Defendants' assertion that Bahrani impermissibly grouped all of the Defendants into a single wrongdoing entity and thereby failed to identify the alleged wrongdoers and their individual misconduct with sufficient particularity. To the contrary, Bahrani has specifically alleged that employees in the documentation department of each of the Defendants falsified Export Certificates for animal products in the manner he describes in violation of the False Claims Act. This is not, therefore, a case in which the plaintiff did not specify the role played by individual defendants in furtherance of a joint fraud. As required by Rule 9(b), Bahrani's allegations gives each Defendant notice of the fraudulent acts for which it is alleged to be responsible. *See Schwartz,* 124 F.3d at 1253.

#### 2. Technical Errors and Omissions

Defendants argue dismissal is required because Bahrani did not cite to the specific or proper subsections of the FCA in pleading subject matter jurisdiction and compliance with the Act's requirement that he provide the United States with the complaint and a disclosure statement. *See* 31 U.S.C. § 3730(b) (subject matter jurisdiction); § 3730(b)(2) (disclosure statement). As Defendants admit, however, these are technical or typographical errors at most that in no way misled Defendants on either point. As there is no question section

3730(b) grants subject matter jurisdiction in this action, and that Bahrani has otherwise properly alleged compliance with the statutory disclosure requirement, there is no basis for dismissal on either ground.

## *CONCLUSION*

Defendants' Motion to Dismiss is **DE-NIED.** In light of this decision, Plaintiff's Alternative Motion for Leave to File an Amended Complaint is **DENIED** as moot.

IT IS SO ORDERED.