UNITED STATES of America, ex rel, Ali BAHRANI, Plaintiffs,

v.

CONAGRA, INC.; Conagra Hide Division; Conagra Beef Companies, and Monfort, Inc.,

No. CIV.A.00–K–1077.

United States District Court, D. Colorado.

Sept. 30, 2004.

George Harold Parker, Jr., Dedolph & Parker, LLP, Fort Collins, CO, for Plaintiff.

Darrell G. Waas, David Patrick Hutchinson, Patricia Claire Campbell, Daniel Kennedy Calisher, Otten, Johnson, Robinson, Neff & Ragonetti, P.C., Denver, CO, John J. Schirger, Mark F. Enenbach, Thomas James Kelley, Edward George Warin, Mcgrath, North, Mullin & Kratz, Omaha, NE, for Defendants.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This reverse false claim *qui tam* action is before me on various motions and cross-motions for partial summary judgment. The motions, following in the wake of my Memorandum Decision denying Defendants' Motion to Dismiss,[1] are largely requests for discrete legal determinations, which I decline to address piecemeal. Finding upon review of these motions that the overarching question in this case remains the viability of Plaintiff's legal theory of relief under the reverse false claims provision of the False Claim Act, I issued an Order posing a series of questions for counsel and set the summary judgment motions for oral argument. At the conclusion of oral argument, I granted both sides leave to file supplemental materials and legal briefs.

I have now reviewed all of the briefs and materials submitted by the parties on the issues raised on summary judgment. I have also considered the oral presentations of both sides. After careful consideration of these and an exhaustive review of the False Claims Act and various statutes governing the certification of agricultural products for export, the regulations promulgated thereunder, and the legal authorities and case law interpreting these statutory and regulatory provisions, I conclude Plaintiff has failed to adduce sufficient evidence to support a cognizable reverse false claim theory of relief against Defendants under 31 U.S.C. § 3729(a)(7). Specifically, Plaintiff has failed to come forward with facts to support its contention that Defendants engaged in unlawful action for the purpose of avoiding or de-

---

1. That decision, *U.S. ex rel. Bahrani v. Conagra, Inc.,* is published at 183 F.Supp.2d 1272 (D.Colo.2002).

creasing an actual or existing "obligation to pay" moneys otherwise due and owing to the government. Under these circumstances, and even assuming Defendants' alleged activities in altering or changing agricultural export certificates violated rules or regulations prohibiting such alteration or change, there can be no liability under the Act. Accordingly, summary judgment shall enter in favor of Defendants and against Plaintiff on all of Plaintiff's claims.

### Discussion.

#### 1. Background.

Relator Ali Bahrani bases his cause of action under Section (a)(7) of the False Claims Act, 31 U.S.C. § 3729(a)(7), on the allegation that Conagra documentation department employees near Greeley, Colorado, routinely forged, falsified or altered USDA Export Certificates in order to avoid obtaining replacement, or "in lieu of," certificates for which Conagra should have paid a $21—$24 user fee. By engaging in such actions up to 200 times per week over a period of ten years, Bahrani estimates Conagra, through the actions of these employees, defrauded the government out of up to $1 billion in user fees it would have received had Conagra secured the requisite replacement certificates.

While a typical False Claims Act action alleges an excessive payment from the United States *to* the defendant, the statute was amended in 1986 to support a "reverse false claim" action alleging an insufficient payment from the defendant *to* the United States. Under a "reverse false claim" theory, any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government" is liable under 31 U.S.C. § 3729(a)(7) for treble damages and per-claim penalties that may exceed by many times the dollar amount out of which the government was

allegedly defrauded. *See generally* John T. Boese, *Civil False Claims and Qui Tam Actions*, vol. 1, "Historical Overview" (2d ed. Aspen Pub.1993 & 2004–2 Supp.)(discussing Act's evolution from Civil War area through its 1986 amendment).

In my Memorandum Decision denying Defendants' Motion to Dismiss in this case, I concluded Bahrani's allegations that Conagra falsified export certificates in order to avoid paying the user fee necessary to obtain mandatory "in lieu of" certificates "f[ell] squarely within this provision." *Bahrani*, 183 F.Supp.2d at 1278. In doing so, I accepted as true not only the factual averments that Conagra altered or forged export certificates after they were certified and did so with the requisite intent to defraud the government out of fees it would have charged to issue replacements, but also the underlying legal premise that Conagra, but for the fraud, would have been "obligated" both to obtain the replacement certificates *and* "to pay" the associated fees but for its fraud. It is the existence of this "obligation to pay," and the remedy available for violating it, that is proving problematic on summary judgment.

#### 2. Legal Standard.

■ Congress's intent in enacting the so-called reverse false claims provision of the False Claims Act was to "give[ ] the United States a means to recover from someone who makes a material representation to avoid paying some obligation owed to the government." *United States v. Q Int'l Courier*, 131 F.3d 770, 772 (8th Cir.1997) (citing S.Rep. No. 99–345, at 15, 18, *reprinted in* 1986 U.S.C.C.A.N. 5266, 5280, 5283); *Am. Textile Mfrs. Inst., Inc. (ATMI) v. The Limited, Inc.*, 20 ITRD 2380, 1997 WL 33421319 (S.D.Ohio 1997)(providing extensive analysis of legislative history underlying § 3729(a)(7) and granting motion to dismiss), *aff'd*, 190 F.3d

729, 736 (6th Cir.1999)(affirming dismissal, providing additional discussion of legislative history and collecting cases); *cf. United States ex rel. Aakhus v. Dyncorp, Inc.,* 136 F.3d 676, 680–81 (10th Cir.1998)(outlining mechanisms of recovery under FCA, including "reverse false claims," but without reference to congressional purpose or intent). *See generally,* Boese, *supra,* "Historical Overview" & § 2.01[G][1].

 The Tenth Circuit has yet to address the contours of this provision critically, but courts that have are in agreement that the focus of the inquiry is on the nature of the "obligation" on which a reverse false claim may be based. The "obligation" to pay or transmit money may arise in contract, or at law in the form of a legal judgment or "debt," or may be created by statute or regulation. *See Q Int'l,* 131 F.3d at 773 (citing *United States ex rel. S. Prawer & Co. v. Verrill & Dana,* 946 F.Supp. 87, 89, 93–95 (D.Me.1996)); *see generally* Boese, *supra,* § 2.01[G][1] *and* "Construction and Application of 'Reverse False Claim Provision' of False Claims Act, 31 U.S.C.A. § 3729(a)" § 4, 162 A.L.R. Fed. 147, 2000 WL 713697 (2004). Whatever its source, however, the "obligation" refers not only to a real and legally enforceable duty to pay or transmit money or property to the government, but one that pre-exists the acts in which the defendant engages to avoid it. *ATMI,* 190 F.3d at 734–35 (§ 3729(a)(7) "prohibits the use of a false statement to 'conceal, avoid, or decrease an obligation,' and does not use the phrasing 'that create an obligation' "). *Accord Q Int'l,* 131 F.3d at 773; *Prawer,* 946 F.Supp. at 93–95. A contingent or potential liability to the government is not a cognizable financial "obligation" to the government, *Q Int'l* at 773, nor is an obligation "that will arise only after the exercise of discretion by government actors." *ATMI,* 190 F.3d at 738. Because the "obligation" to pay user fees in the instant case, under even the most

favorable view of Bahrani's theory of relief, is contingent not only on the nature of the "obligation" to obtain and pay for replacement certificates in the first instance when information on existing certificates is changed, but also on the government's discretion to consent to changes being made directly on the certificate without the need for a replacement, Bahrani's allegations state no actionable reverse false claim under the FCA.

3. *The "Obligation" to Obtain, and Pay for, Replacement Certificates under Department of Agriculture Regulations.*

· The specific source of the "obligation" to obtain replacement or in-lieu of certificates—and to pay the government for them—has been elusive from the outset of this case. In his Complaint, Bahrani simply asserted that "[i]n a situation where the information on the export certificate changed because the identity of the buyer and destination changed, *the law* requires issuance of a new export certificate with the correct information." Compl. ¶ 35 (emphasis added). In his Response to Conagra's Motion to Dismiss, Bahrani identified "C.F.R. 322.2" (which I read as a reference to *9* C.F.R. § 322.2) as the source for "the law" governing Conagra's "duty to pay a sum certain before an export document can be altered or modified from the original" and for the amount of that sum, "$21.50 per false export certificate." *See* Response at p. 20. Section 322.2, however, describes procedures for the issuance, upon application, of export certificates as part of the Department of Agriculture's food safety and inspection *voluntary* certification procedures for meat products, and merely authorizes inspectors to issue official export certificates for shipments of inspected and passed product to foreign countries upon application of the exporter, *see* 9 C.F.R. § 322.2(a), and, "for sufficient reasons,"

otherwise unidentified, to issue "new certificates in lieu of the original certificates." *Id.* § 322.2(c). Section 322.2 is silent as to the circumstances under which the securing of an "in lieu of" certificate is necessary, and says nothing about the securing of such a certificate, or paying for it, being mandatory. Applying an extremely deferential standard to Bahrani's Complaint under Rule 12(b)(6), however, I assumed the obligation rested somewhere else in the regulatory scheme and denied Conagra's Motion to Dismiss.

The question of the source of Conagra's purported "obligation to pay ... money ... to the government" for replacement or "in lieu of" certificates arose tangentially again in Conagra's Motion for Partial Summary Judgment on Hide Exports. In response to the Motion, which was a challenge to the falseness or fraudulent nature of Conagra's alleged alterations under the Act rather than a challenge to the existence of the legal "obligation to pay" itself, Bahrani argued the alteration of hide export certificates—even if only to correct errors that existed in the original certificate—impacts the. integrity of the USDA certification–process and violates USDA policy "strictly prohibit[ing] any alterations, changes or corrections to their export certificates without the prior knowledge and approval of the certifying inspection official." Pl.'s Resp. to Mot. Partial Summ. J. on Hide Exports at pp. 2–3. As support for this policy or "obligation," Bahrani attached the affidavit of Dr. Mark T. Mina, a 30–year USDA employee and retired USDA Deputy Administrator for Field Operations.

In his affidavit, Dr. Mina, without reference to any federal statute or Department of Agriculture regulation, testified that it is a "long-standing policy" of the USDA to maintain the integrity of the export certification process and that "any change, correction, or alteration made to a USDA export certificate after it has been signed by a USDA official is serious and improper." Mina Affid. (attached as Ex. A to Relator's Response to Mot. Partial Summ. J. on Hide Exports) at ¶¶ 4–5. "When Conagra alters, changes or corrects USDA export certificates for cattle hides and animal meat products (including beef, pork and poultry)," Dr. Mina continued, "then it avoids paying set and established monetary fees to the USDA to obtain the necessary and correct documentation required by them to export their products." *Id.* ¶ 7. Dr. Mina does not identify the source for the set and established monetary fees avoided by such alteration or change, but it is an apparent reference to user fees for endorsing export certificates set forth in 9 C.F.R. § 130.20. I note that user fees under 9 C.F.R. part 130 are for the purpose of reimbursing the Department of Agriculture for costs incurred in connection with the furnishing of services, including the endorsing of certificates, *see* 9 C.F.R. § 156.7, and may be in the nature of a flat fee as in the instance of cow hides under APHIS regulations or based on a 1/4 hour minimum of a veterinarian's hourly rate under FSIS regulations for meat, pork and poultry.

Leading up to oral argument on the various Motions for Summary Judgment, then, the "obligation" to obtain replacement certificates and "to pay" the government a user fee for doing so appeared to be based, at most, on an informal agency practice or policy interpretation of 9 C.F.R. § 322.2, and not any duty or obligation codified anywhere in the applicable regulations. Accordingly, I asked the parties to identify, with specificity, (1) "the source of the obligations to obtain a new certificate and to pay an additional fee"; (2) the "law" referenced in ¶ 35 of Plaintiff's Complaint; (3) whether the government could enforce this "law" and, if so, how; and (4) if the "obligation" referred to

a policy interpretation or informal agency practice, what legal basis is there for enforcing that policy or practice through a whistleblower action under the FCA? *See* Order, dated 7/22/04. The answers to these questions received at oral argument, and set forth in the supplemental filings I allowed the parties to file in its wake, persuade me Relator's theory of relief in this case is not actionable under the reverse false claims provision of 31 U.S.C. § 3729(a)(7) under *Q Int'l, ATMI* and related authority.

In the instant case, Relator's reverse false claim is premised on an averred statutory or regulatory obligation that is neither apparent in the regulatory scheme nor enforceable by the government in an action at law. None of the statutory or regulatory provisions cited in Bahrani's argument or in his supplemental filings—not the 1990 Farm Bill or the APHIS and FSIS user fee regulations promulgated thereunder, not FSIS Directive 9000.1 setting forth the grounds under which a replacement certificate may be issued—establishes that an exporter is *required* to obtain a replacement certificate every time a change to an existing certificate is made. To the contrary, Bahrani's own witness, Dr. Mina, specifically states in his affidavit that the proper procedure for making changes to an existing export certificate under USDA regulations and policy may include simply *"inform[ing]* the certifying official (inspector or veterinarian) of the changes that need to be made *and the certifying official will initial the change or, if the changes are major, he will issue a replacement or in lieu of certificate at the request of the exporter."* Mina Affid. at ¶ 12 (emphasis added). Under all of the applicable legal authority, an "obligation" that is contingent, or that will arise only after the exercise of discretion by govern-

ment actors, is not contemplated by the statute. *See ATMI,* 190 F.3d at 738 (citing cases).

Even assuming, for the sake of argument, that an "obligation to pay" APHIS or FSIS user fees arises every time an existing export certificate is altered, the act of altering the certificate (rather than requesting a replacement) is not an actionable reverse false claim because that "obligation" arises only as a result of that act and did not exist before. In *ATMI,* the Sixth Circuit affirmed the dismissal of a reverse false claim premised on the alleged submission of entry documents for imported textiles that included erroneous country of origin information. According to the *qui tam* plaintiff, the false information was included to avoid regulations prohibiting such importation and to avoid various duties, taxes and potential penalties that would otherwise apply. Affirming the district court's conclusion that such conduct does not give rise to an actionable reverse false claim under 31 U.S.C. § 3729(a)(7), the Sixth Circuit agreed that the scope of the reverse false claim provision was far narrower than to encompass acts of a defendant aimed at avoiding getting "caught" violating a statute or regulation or having to pay a fee or fine or tax or customs duty that could be imposed if he were playing straight. 190 F.3d at 738–39. The statutory or regulatory "obligation" had to be quantifiable and existing *before* the allegedly fraudulent acts taken to avoid it, lest an individual risk liability in a *qui tam* action any time he makes a false statement of compliance, or remains silent to avoid triggering an obligation to pay a fee or fine or tax or other financial duty under an applicable federal regulation. *Id.*

▮ As applied in the present case, Conagra's failure to inform the USDA of corrections [2] it made to existing export

---

**2.** There is no dispute in this case that the alterations or changes at issue were to correct errors in the original certificates, not to insert false information in the place of true.

certificates—even if its purpose *was* to avoid an "obligation to pay" the user fees contemplated under the 1990 Farm Bill and the regulations promulgated thereunder—is precisely the kind of conduct deemed inactionable as a reverse false claim in *ATMI*. The definition of "obligation" under § 3729(a)(7) does not include those contingent obligations that arise only because the government has prohibited an act (changing an official USDA export certificate without notifying the USDA—there are other means of enforcing that obligation), or that may arise once the government exercises discretion (an inspector declining to initial a "major" change to an export certificate so the exporter must request, and pay for, a replacement).

### *Conclusion.*

The acts of Conagra on which Bahrani premises this *qui tam* action on behalf of the United States for millions, perhaps billions, of dollars in penalties and treble damages, do not give rise to an actionable cause of action under 31 U.S.C. § 3729(a)(7). A defendant does not execute a reverse false claim by engaging in behavior that might or might not result in the creation of an obligation to pay or transmit money or property to the government. Accordingly, summary judgment shall enter in favor of Defendants and against the Relator on all of Relator's claims. This ruling terminates this action and any remaining pending motions are DENIED as MOOT.